IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ERIC McMICHAEL,                         )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )    1:15CV528
                                        )
CAROLYN W. COLVIN,                      )
Acting Commissioner of Social Security, )
                                        )
            Defendant.                  )

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Eric McMichael, seeks review of a final decision of the Commissioner of Social Security denying his claim for a Period of Disability and Disability Insurance Benefits ("DIB"). The Court has before it the certified administrative record and cross-motions for judgment. (Docket Entries 6, 8, 10.) For reasons discussed below, it is recommended that Plaintiff's motion for judgment reversing the Commissioner (Docket Entry 8) be granted, Defendant's motion for judgment on the pleadings (Docket Entry 10) be denied, and that the Commissioner's decision be remanded.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB in June 2013, alleging a disability onset date of June 27, 2010. (Tr. 163-66.)[1] His applications were denied initially and upon reconsideration. (Tr. 77, 90.) Thereafter, Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ").

---

[1] Transcript citations refer to the sealed administrative record which was filed with Defendant's Answer. (Docket Entry 6.)

1

(Tr. 101-02.) Plaintiff, his attorney, and a vocational expert ("VE") appeared at the hearing on April 1, 2014. (Tr. 34-64.) A decision was issued on August 8, 2014, upholding the denial of Plaintiff's application for DIB. (Tr. 12-33.) On June 7, 2015, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review. (Tr. 1-8.)

## II. STANDARD OF REVIEW

The Commissioner held that Plaintiff was not under a disability within the meaning of the Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hunter*, 993 F.2d at 34 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[It] 'consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.'" *Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. *Richardson*, 402 U.S. at 401. The issue before the Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

Thus, "[a] claimant for disability benefits bears the burden of proving a disability," *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981), and in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]'" *Id.* (quoting 42 U.S.C. § 423(d)(1)(A)). "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." *Id.* "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." *Id.* (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity ("RFC") to (4) perform [the claimant's] past work or (5) any other work." *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The law concerning these five steps is well-established. *See, e.g., Mastro v. Apfel*, 270 F.3d 171, 177-180 (4th Cir. 2001); *Hall*, 658 F.2d at 264-65.

### III. THE ALJ'S DISCUSSION

The ALJ followed the well-established five-step sequential analysis to ascertain whether

3

Plaintiff is disabled, which is set forth in 20 C.F.R. § 404.1520. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). In rendering her disability determination, the ALJ made the following findings later adopted by Defendant:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engage in substantial gainful activity since June 27, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*).

    . . . .

3. The claimant has the following severe impairments: degenerative joint disease and bursitis of the left knee, status post arthroscopic surgery in September 2010; lumbar degenerative disc disease, status post surgery in January 2013; degenerative joint disease of the right knee, status post arthroscopic surgery in November 2014; and bilateral shoulder impingement (20 CFR 404.1520(c)).

    . . . .

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

    . . . .

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) except that the claimant is further limited to: never climbing ladders, ropes, or scaffolds; occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; occasional contact with workplace hazards such as unprotected heights and dangerous machinery; occasional overhead reaching with the right upper extremity; and he must be allowed to alternate between sitting and standing two times an hour.

(Tr. 17, 20.)  In light of the above findings regarding Plaintiff's RFC, the ALJ determined that Plaintiff was unable to perform his past relevant work as a diplomatic security officer and as a chauffeur. (Tr. 26.)  Based upon Plaintiff's age, education, work experience, and his RFC, the ALJ concluded "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 27 (citing 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).  Accordingly, the ALJ concluded that Plaintiff was not disabled.  (Tr. 28.)

## IV. ANALYSIS

In pertinent part, Plaintiff contends that the ALJ failed to account for Plaintiff's mental limitations in the RFC.[2]  (Docket Entry 11 at 7-12.)  "At step three of the sequential evaluation, the ALJ determines whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Listings 12.00 *et. seq.*, pertain to mental impairments." *Hodge v. Comm'r, Soc. Sec. Admin.*, No. CV SAG-14-3619, 2015 WL 5813999, at *1 (D. Md. Sept. 29, 2015) (unpublished) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00).  Each listing therein contains: (1) a brief statement describing its mental disorder; (2) "paragraph A criteria," consisting of a set of medical findings; and (3) "paragraph B criteria," consisting of functional limitations related to the impairment.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A).  Both the paragraph A criteria and the paragraph B criteria must

---

[2] Plaintiff also contends that the ALJ's credibility determination is not supported by substantial evidence.  (Docket Entry 11 at 2-7.)  Further, Plaintiff asserts that the Court is unable to determine the basis of the ALJ's RFC findings because she gave little weight to all opinions except for one.  (*Id.* at 12-15.)  The court declines consideration of the additional issues raised at this time.  *Hancock v. Barnhart*, 206 F. Supp. 2d 757, 763-64, n.3 (W.D. Va. 2002) (reasoning that on remand, the ALJ's prior decision has no preclusive effect, as it is vacated and the new hearing is conducted de novo).

be satisfied for the ALJ to determine that the claimant meets the listed impairment. *Id.*

"Paragraph B consists of four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation." *Id.* § 12.00(C); *Martin v. Comm'r, Soc. Sec. Admin.*, No. CV SAG-15-335, 2015 WL 7295593, at *2 (D. Md. Nov. 18, 2015) (unpublished). The ALJ uses a "special technique" to determine the claimant's degree of limitation in each area, based on the extent to which the claimant's impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 404.1520a(c)(2). The ALJ rates a claimant's degree of limitation in the first three areas as either: none, mild, moderate, marked, or extreme. *Id.* § 404.1520a(c)(4). "In order to satisfy paragraph B, a claimant must exhibit either marked limitations in two of the first three areas, or marked limitation in one of the first three areas with repeated episodes of decompensation." *Hodge*, 2015 WL 5813999, at *2 (citations and quotations omitted) (unpublished). If the claimant does not meet the requirements of step three, the ALJ conducts an RFC assessment to determine if the impairment prevents the claimant from returning to past work. *See Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001); *Albright*, 174 F.3d at 475 n.2.

According to SSR 96–8p,

[T]he adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and

6

> 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings . . . .

SSR 96–8p, 1996 WL 374184, at *4. Here, the ALJ noted that Plaintiff was diagnosed with "adjustment disorder with mixed anxiety and depressed mood." (Tr. 19, 1419.) At step two the ALJ found that Plaintiff had mild limitations in social functioning and in concentration, persistence or pace. (Tr. 19.) At step three, with respect to social functioning, the ALJ reasoned that Plaintiff

> testified that he tries to avoid being in situations that could increase his mood or anxiety symptoms, like crowded places. He is able to tolerate being in stores and public places; he just goes when they are less crowded. The claimant told Ms. Anderson that he goes to the mall to walk and people watch when it is less crowded. He reported that he is very social around family and close friends.

(Tr. 19.) (internal citation omitted).

With respect to concentration, persistence or pace, the ALJ stated that Plaintiff "has no more than mild limitation." (*Id.*) In addition, the ALJ states that "as of a [Compensation and Pension examination ("C&P")] for mental disorders in September 2014, the claimant had no complaints of impairment or memory, attention, concentration, or executive functions . . . ." (Tr. 19-20.) However, these findings were made in a C & P examination that evaluated "[r]esiduals of [t]raumatic [b]rain [i]njury," not in the C & P for mental disorders. (Tr. 1423.) The C & P mental disorders examination, also conducted in September 2014, indicated that Plaintiff's mental disorder caused an occupational and social impairment which "reduced [Plaintiff's] reliability and productivity." (Tr. 1420.) Moreover, the following symptoms

7

were checked: depressed mood; anxiety; panic attacks that occur weekly or less often; chronic sleep impairment; mild memory loss, such as forgetting names, directions or recent events; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships; difficulty in adapting to stressful circumstances, including work or work like setting; impaired impulse control, such as unprovoked irritability with periods of violence. (Tr. 1422.) It was concluded at the end of the examination that Plaintiff's "[a]nxiety depression irritability and other mental health symptoms ha[d] increased . . . [and] [m]ost symptoms noted above are now in the moderate range, occasionally moderately severe." (*Id.*) Without discussing this evidence the ALJ determined that Plaintiff's adjustment disorder was non-severe. (Tr. 19.) Other than the step three analysis highlighted above, there was no discussion of Plaintiff's mild limitations in social functioning or concentration, persistence or pace elsewhere in the ALJ's decision.

Critically, the ALJ expressly stated that her step three analysis is *not* a substitute for an in-depth RFC review requiring a "more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listing in 12.00 of the Listing of Impairments." (Tr. 20.) Thus, the ALJ understood that her step three analysis does not sufficiently consider the effect of Plaintiff's adjustment disorder, anxiety and depression on "[w]ork-related mental activities generally required by competitive, remunerative work [, which] include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting."

8

*See Ashcraft v. Colvin*, No. 313CV00417RLVDCK, 2015 WL 9304561, at *9 (W.D.N.C. Dec. 21, 2015) (unpublished) (citing SSR 96–8p, 1996 WL 374184, at *5)).[3]

Moreover, the RFC does not comply with the standard set forth in *Mascio*. In *Mascio*, the Fourth Circuit determined that remand was appropriate for three distinct reasons, one of which is relevant to the analysis of this case. Specifically, the Fourth Circuit remanded *Mascio* because the hypothetical the ALJ posed to the VE, and the corresponding RFC assessment, did not include any mental limitations other than unskilled work, despite the fact that, at step three of the sequential evaluation, the ALJ determined that the claimant had moderate difficulties in maintaining concentration, persistence or pace. *Mascio*, 780 F.3d at 637-38.

The Fourth Circuit specifically held that it "agree[s] with other circuits that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id.* at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)) (internal quotation marks omitted). In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence or pace

---

[3] *See also Reinhardt v. Colvin*, No. 3:14-CV-00488-MOC, 2015 WL 1756480, at *3 (W.D.N.C. Apr. 17, 2015) (unpublished) (reasoning that the ALJ expressly stated that "the paragraph B criteria are not a [RFC] assessment, . . . . and further acknowledged that the '[RFC] assessment . . . at steps 4 and 5 requires a more detailed assessment . . . [however, the] court is at a loss to discover in the remainder of his determination a discussion of the more detailed . . . [RFC] assessment.'")

9

did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary. *Id.*

Here, "[b]y finding in step-two that Plaintiff suffers from mild limitations in the above-discussed areas, the ALJ admitted that facts exist which correlate with a limitation on the Plaintiff's ability to stay on task and possibly perform other work-related functions." *Ashcraft*, 2015 WL 9304561, at *9 (internal citation omitted). "As *Mascio* points out, admitting a limitation in concentration, persistence and pace correlates to a limitation in ability to stay on task, one that the ALJ neither posed to the VE, nor included in his assessment." *Wedwick v. Colvin*, No. 2:14CV267, 2015 WL 4744389, at *23 (E.D. Va. Aug. 7, 2015) (unpublished). Moreover, there are no mental limitations at all in the RFC.

Furthermore, the ALJ did not provide a valid explanation as to why Plaintiff's difficulties in maintaining attention and concentration did not translate into a limitation in the RFC. "The key is that the reviewing Court must be able to discern the rationale underlying the apparent discrepancy" between the findings at step three and the RFC. *Powell v. Comm'r, Soc. Sec. Admin.*, No. CIV. SAG-14-3233, 2015 WL 4715280, at *2 (D. Md. Aug. 6, 2015) (unpublished). At step three the ALJ states that "the record does not show any persistent or significant complaints of concentration, persistence or pace." (Tr. 19.) Further, the ALJ reasons that the C & P mental disorders examination suggested that Plaintiff "had no complaints of impairment or memory, attention, concentration, or executive functions." (Tr. 20.) (internal citation omitted). These findings were in the "[r]esiduals of [t]raumatic [b]rain [i]njury" C & P examination. (Tr. 1423.) However, the actual C & P for mental disorders

expressly states that Plaintiff "has been experiencing increasing levels of anxiety, depression, irritability . . . [and] [a]lso complains of some difficulty with attention and concentration." (Tr. 1421.) The same examination details the symptoms stemming from Plaintiff's social functioning and concentration impairments concluding that most of them "are now in the moderate range, occasionally moderately severe." (Tr. 1422.) Therefore, the Court cannot discern from this brief discussion why Plaintiff's mild limitations in concentration, persistence or pace did not translate to the RFC. First, there is no discussion of Plaintiff's ability to do work related functions despite his mental impairments. Second, the ALJ cites the wrong examination to support her assertion that there were no complaints of impairment or memory, attention, concentration, or executive functions. As stated above the actual examination suggests that Plaintiff has moderate mental limitations rather than mild. Third, there is at least some evidence that Plaintiff complained of difficulties in concentration and attention. "As a result, without further explanation, the ALJ . . . . does not provide a 'logical bridge,' between the ALJ's conclusion that Plaintiff suffered [mild] concentration deficits and the ALJ's decision . . . [to not place] any . . . concentration-related restriction" in the RFC. *Tricia Boyet, v. Comm'r of Soc. Sec. Admin.*, No. 1:14CV762, 2016 WL 614708, at *6 (M.D.N.C. Feb. 16, 2016) (unpublished) (internal citations omitted); *Cummings v. Colvin*, 2016 WL 792433, at *4 (M.D.N.C. Feb. 26, 2016) (concluding that "the record does not appear to provide the 'logical bridge' necessary for this Court to find that the RFC adequately takes into account Plaintiff's moderate difficulties in concentration, persistence, and pace"). The ALJ's only other attempt to explain that the RFC reflects all of Plaintiff's limitations is the ALJ's boilerplate assertion

11

that the RFC "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (Tr. 20.) This is insufficient to satisfy the standard laid out in *Mascio*. "While . . . the fact that the ALJ found mild limitations in the paragraph B criteria does not necessarily translate to a work-related functional limitation, *Mascio* clearly imposes . . . a duty to explain why such mild mental health impairments found at step two do not translate into work-related limitations . . . ." See *Reinhardt*, 2015 WL 1756480, at *3. Therefore, as many other courts in the Fourth Circuit have reasoned, the ALJ's failure to account for mild limitations in the RFC requires remand.[4]

Additionally, at Plaintiff's hearing the VE testified to three jobs that someone with Plaintiff's physical limitations could do including work as a production inspector, a garment folder, and as a parking lot attendant. (Tr. 59.) Subsequently, the ALJ posed the following

---

[4] *Thompson v. Colvin*, No. 1:15-CV-00234-FDW, 2016 WL 3610161, at *3 (W.D.N.C. July 1, 2016) (unpublished) (concluding that "the ALJ gave no explanation how, if at all, Plaintiff's mild mental limitation factored into the ALJ's RFC analysis or, alternatively, why the limitation was excluded from the RFC formulation"); *Brooks v. Colvin*, No. 1:15-CV-00191-MOC, 2016 WL 1465966, at *6 (W.D.N.C. Apr. 14, 2016) (unpublished) (finding "remand . . . appropriate so that the ALJ can either assign limitations based on plaintiff['s] mental impairments or explain why plaintiff's impairments do not rise to a level requiring the assignment of any such limitations"); *Ashcraft*, 2015 WL 9304561, at *9; *Straughn v. Colvin*, No. 1:14CV200, 2015 WL 4414275, at *4 (M.D.N.C. July 20, 2015) (unpublished) (reasoning that the ALJ did not account for the plaintiff's mild limitations in concentration, persistence or pace by limiting the plaintiff to "simple, routine, tasks secondary to pain and her mental limitations"); *Reinhardt*, 2015 WL 1756480, at *3 (reasoning that the ALJ failed to address why mild limitations in concentration, persistence or pace did not translate into a work-related limitation in the RFC); *cf. Masters v. Comm'r*, 2016 WL 3189194, at *3 (D. Md. June 7, 2016) (unpublished) (concluding that while the ALJ found that the plaintiff suffered moderated difficulties in concentration, persistent and pace, "the ALJ's explanation in support of that finding, however, appears to suggest more of a mild limitation" but remanding because "the ALJ imposed no limitations in the RFC assessment to address an inability to sustain concentration, and at no point in the opinion does the ALJ discuss, for example, an ability to sustain concentration during simple tasks but difficulties with complex ones").

12

questions to the VE who responded:

> Q  All right. And generally what are the typical breaks allowed in a normal workday?
> A  One can expect 15 minutes in the morning, 15 minutes in the afternoon, and perhaps 30 minutes to an hour for a lunch period.
> Q  All right. Are there any additional rest breaks, say up to ten percent off task per workday?
> A  Your Honor, most jobs will allow for that, yes.
> Q  All right, if someone were off task 20 percent or more of the workday, would these or any jobs be available?
> A  No, Your Honor. Twenty percent off task is excessive in terms of normal allowable break time and would not be consistent with gainful employment.
> Q  All right, and how about absences on a monthly basis? What's generally the tolerance for that?
> A  One could expect eight to 12 days per year, about one day per month. At the upper end, about one day per month of allowable absenteeism. Beyond that certainly becomes problematic.

(Tr. 60-61.) Subsequently, the hearing was terminated with no other findings related to the amount of time an employee would have to stay on task. (Tr. 61-62.) It appears that the ALJ attempted to address Plaintiff's mental impairments by posing two hypothetical questions regarding Plaintiff's limitations in his ability to stay on task. (Tr. 61-62.) The ALJ asked the VE if being off task 10 percent or 20 percent of the workday was consistent with gainful employment. (Tr. 61-62.) The VE testified that being off task 20 percent of the workday would create a situation that "would not be consistent with gainful employment." (Tr. 61.) Despite the VE's testimony, the ALJ made no findings in the RFC regarding Plaintiff's ability to stay on task. *See Ashcraft*, 2015 WL 9304561, at *11 (concluding that the ALJ failed to account for the VE's determination that the inability to focus causing the plaintiff to be off task for 20 percent of the work day would prevent him for being able to do the jobs highlighted by the VE). Thus, the Court concludes that it is unable to conduct a meaningful review of

13

the ALJ's RFC assessment.

Defendant contends that the record contains only one mental health evaluation finding that Plaintiff only had mild anxiety symptoms. (Docket Entry 11 at 10-11; Tr. 1547.) Thus, according to Defendant, the record "supports the ALJ's conclusion that Plaintiff had no mental impairments during the relevant period that significantly affected his activities of daily living, social function, or concentration, persistence or pace, and there were no episodes of decompensation." (Docket Entry 11 at 11.) However, the ALJ did not mention the contradictory evidence discussed above. The C & P mental disorders examination suggests that Plaintiff suffered from moderate limitations with respect to: memory loss, difficulty in establishing and maintaining effective work and social relationships; difficulty in adapting to stressful circumstances, including work or work like setting; and impaired impulse control, such as unprovoked irritability with periods of violence. (Tr. 1422.) Additionally, the examination findings suggest that "most of the symptoms . . . [are] occasionally moderately severe." (*Id.*) All of these impairments are related to either social functioning or concentration, persistence or pace. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1. Listings 12.00(C).

The ALJ discussed another examination evaluating Plaintiff's traumatic brain injury but inaccurately called it the C & P mental disorders examination. (Tr. 19.) Based on the ALJ's inaccurate discussion of the C & P mental disorders examination, finding most of Plaintiff's mental impairments to be moderate and occasionally moderately severe, the Court cannot determine whether the examination was taken into account. "The Court acknowledges that

14

an ALJ's 'failure to discuss every specific piece of evidence does not establish that she failed to consider it.' However, the ALJ's decision must still ultimately 'reflect that she conducted a thorough review of the evidence before her.'" *Sanford v. Colvin*, No. 1:14CV885, 2016 WL 951539, at *4 (M.D.N.C. Mar. 9, 2016) (unpublished) (finding that "the ALJ's decision omitted all discussion of Plaintiff's physical impairments and the related medical evidence . . . [and that] the relevant medical evidence was not addressed at any [other] point in the evaluation process") (internal citation omitted); *see also Hudson v. Colvin*, No. 7:12-CV-269-FL, 2013 WL 6839672, at *8 (E.D.N.C. Dec. 23, 2013) (unpublished) (reasoning that the ALJ failed to discuss relevant inconsistent evidence in the record and that "his silence . . . raises the question whether he even considered this evidence, notwithstanding his boilerplate representations that he considered all the evidence"). Thus, the ALJ's failure to address evidence that contradicts her assertion that no mental impairments during the relevant period significantly impacted Plaintiff's social function, or concentration, persistence or pace requires remand. The Court expresses no opinion regarding whether Plaintiff is ultimately disabled under the Act and the Court declines consideration of the additional issues raised by Plaintiff at this time. *Hancock*, 206 F. Supp. 2d at 763-64 n.3 (on remand, the ALJ's prior decision has no preclusive effect, as it is vacated and the new hearing is conducted *de novo*).

## V. CONCLUSION

For the reasons stated herein, this Court **RECOMMENDS** that the Commissioner's decision finding no disability be **REVERSED,** and the matter be **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be

directed to remand the matter to the ALJ for further administrative action as set out above. To this extent, Defendant's motion for judgment on the pleadings (Docket Entry 10) should be **DENIED** and Plaintiff's motion for judgment reversing the Commissioner (Docket Entry 8) should be **GRANTED**. To the extent that Plaintiff's motion seeks an immediate award of benefits, his motion should be **DENIED**.

                                             /s/ Joe L. Webster
                                             Joe L. Webster
                                        United States Magistrate Judge

August 31, 2016
Durham, North Carolina